# CHARLESTON.

## SWANN v. YOUNG et al.

Submitted January 14, 1892.—Decided February 3, 1892.

| | |
|---|---|
| 36 | 57 |
| 37 | 226 |
| 37 | 639 |
| 36 | 57 |
| 38 | 14 |
| 36 | 57 |
| 42 | 606 |
| 36 | 57 |
| 47 | 215 |
| 36 | 57 |
| 50 | 608 |
| 36 | 57 |
| 59 | 127 |
| 36 | 57 |
| f64 | 693 |

1. ADVERSARY POSSESSION.

   The elements of an adversary possession of land, with reference to the statutory bar, are: (1) It must be under color or claim of title. If under claim of title only, it does not require the act of any vendor or other party; but in such case the possession is limited to the claimant's inclosure. Color of title is a deed or other writing from some one which shows the nature of the party's claim and defines its extent. (2) The possession must be actual. The land must bear on some part of it permanent, visible, open marks of the claimant's ownership, as by occupation, cultivation, or such like use and enjoyment, such as may be seen by any one who may pass that way. (3) It must be adverse. It must be held exclusively be the claimant as owner, and against all others. (4) It must be bona fide, but it is not necessary that the claimant should believe his claim to be a good or valid one. He may know that some other person has the better right. It is not necessary that he should think his claim good in its inception for it generally begins in and presupposes wrong; but it must not be fraudulent, nor, except in certain cases well settled, involve any breach of trust. In this State the tenant may in some cases assert his adverse colorable title against his landlord without first restoring the possession; but his possession will not be adverse, until and unless notice of his disclaimer has been distinctly and unequivocally brought home to the landlord; and having entered under his landlord's title he can not dispute it, in the sense of putting him to the proof of title. But, this privilege being liable to great abuse, in such case it will be subjected to rigid scrutiny— a great strictness of proof that knowledge of the disclaimer has been brought home to the landlord. (5) Such possession must be continuous and uninterrupted for (ten years by our law) the period prescribed by the statute—"continuous," in the sense of not being abandoned by himself; "uninterrupted," in the sense of not being effectively broken by another.

2. ADVERSARY POSSESSION.

   A case in which the doctrine of adversary possession is applied.

J. S. Swann, O. Johnson and A. Burlew for appellant cited same authorities as in the preceding case.

*Knight & Couch* for appellees cited the same anthorities as in the preceding case.

Holt, Judge:

This is a suit in equity brought on the ——— day of March, 1889, in the Circuit Court of Kanawha county, by Thomas B. Swann, the appellant, against John M. Young and others, appellees. To plaintiff's bill the defendant John M. Young filed a general demurrer, and the cause on July 8, 1889, came on to be heard on bill, demurrer, and argument of counsel; whereupon the court sustained the demurrer, and, the plaintiff not desiring to amend his bill, it was adjudged, ordered, and decreed that plaintiff's bill be dismissed, with costs. From this decree plaintiff obtained this appeal.

The grounds of demurrer or of the ruling of the court are not stated; but I take it for granted that the court held that plaintiff's claim was, by his own showing, a stale one and barred by the statute of limitations.

The facts as they appear by the bill are as follows: George W. Summers and wife, by deed dated May 31, 1860, and duly admitted to record, conveyed to plaintiff, Thomas B. Swann, a house and lot in the town of Charleston, containing two acres, being the property on which the said Summers had resided for several years then past, and adjoining the lot of William J. Rand on Front street. The consideration was, including interest, four thousand five hundred dollars. On the 23d day of April, 1861, plaintiff borrowed from John D. Young, now deceased, the father of defendant John M. Young, the sum of three thousand dollars in paper, and executed to John D. Young his note for three thousand dollars, bearing interest from date, and due in three years; and to secure the same executed to A. W. Quarrier, as trustee, a deed of trust on certain lands therein named. This deed of trust was acknowledged for record, and left with the trustee, who was also the clerk of the county court of Kanawha county, but not to be recorded at once.

Plaintiff became convinced that the country was drifting into a civil war. He was a bachelor, a member of a military company and liable to be called into the service away

from his home—the Summers property, in which he lived—which would leave it unoccupied and liable to waste or destruction. He mentioned this to his friend John D. Young, whom he regarded as a Union man and a man of integrity, and asked that his home, the Summers property, be put in the deed of trust; that John D. Young, with his family, move into it and hold it for him free of rent, until the war should be ended. To this John D. Young assented. Accordingly, on the 29th day of April, 1861, the two went to the office of A. W. Quarrier, the trustee and clerk, and inserted in the deed of trust, as part of the property conveyed thereby, the "Summers house and lot" of two acres, the only land here in controversy. Plaintiff again acknowledged the deed of trust, and at his request it was admitted to record.

Plaintiff was a soldier in the military service of the Confederate States from the 24th day of June, 1861, until the close of the war, in 1865; and all that time within the Confederate military lines, and away from his home at Charleston from the 24th of June, 1861, until the 13th of May, 1865, when he returned to Charleston, where he has since resided.

In pursuance of this agreement John D. Young, in the fall of 1861, after the town of Charleston and the Kanawha valley were occupied by the federal troops, moved into the Summers house with his family, and lived there until September, 1867.

A. W. Quarrier, the trustee, and family, were also within the Confederate military lines until 1863, when he departed this life, leaving his last will, whereby he appointed his widow, Mrs. C. W. Quarrier, executrix, who returned to Charleston in May, 1865; and on July 10, 1865, the will was duly proved and admitted to record, and she qualified as executrix. But Mrs. Quarrier having departed this life, her son, defendant J. S. Quarrier, qualified as administrator *c. t. a.* on the 22nd day of January, 1889.

On the 12th day of April, 1864, without any notice of the motion to plaintiff or to the heirs or executrix of A. W. Quarrier, deceased, all then within the Confederate military lines, the Circuit Court of Kanawha county made an order

appointing defendant W. L. Hindman trustee in the room
and stead of A. W. Quarrier, deceased, which orders and
exhibits are as follows:

## EXHIBIT G.

"At a Circuit Court held for Kanawha county, at the
court house thereof, on Tuesday, the 12th day of April,
1864: John D. Young. Motion to appoint trustee. It
appearing to the satisfaction of the court that Alexander
W. Quarrier, sole trustee in a certain deed of trust execut-
ed by Thomas B. Swann to secure the payment of three
thousand dollars to John D. Young, bearing date on the
twenty third day of April, 1861, and recorded in the clerk's
office of Kanawha County Court in Book U, page 616, has
departed this life: Now, therefore, on motion of the said
John D. Young, the beneficiary and creditor secured by the
aforesaid deed, the court doth decree, order, and direct that
William Hindman be, and he is hereby, appointed trustee
in the place of said Alexander W. Quarrier, deceased, the
trustee named in the said deed; and the said William L.
Hindman is hereby substituted to all the rights, powers, and
duties of the said Alexander W. Quarrier, deceased, who was
appointed trustee by the deed aforesaid.

"[A copy.]          Teste: C. B. SMITH, Clerk."·

"January 14th, 1889."

## PAPER II:

"At the Circuit Court held for Kanawha county, at the
court house thereof, on Thursday, the 6th day of October,
1864: John D. Young & als. *vs.* Thomas B. Swann. On
trust deed," *etc.* "William L. Hindman, the trustee in the
above cause, this day presented his report of sale," *etc.*,
"which is ordered to be filed.

"[A copy.]          Teste: C. B. SMITH, Clerk."

"January 14th, 1889."

## PAPER J.

"At a Circuit Court held for Kanawha county, at the
court-house thereof, on Wednesday, the 15th day of June,
1864: *John D. Young, John Slack, Sr.,* and *John Slack, Jr.,*
Sheriff *etc.* vs. *Thomas B. Swann.* On petition. This cause
came on this day to be heard on the petition of the said
plaintiff, the report of the trustee therewith filed as Ex't

A. the tax-tickets and fee-bills mentioned in said petition, the transcript of the judgment mentioned in said petition in favor of John D. Young against said T. B. Swann, and also the transcript of the judgment in favor of the said John Slack, Sr., against said T. B. Swann, mentioned in said petition; and it appearing from said report that the said trustee, W. L. Hindman, has made sale of the house and lot in said report and in the trust-deed therein referred to and described, and that there remains a surplus, after paying and satisfying the debt, for which said trust was executed, with interest, costs of sale, *etc.*, as shown by said report, of nine hundred and seventy two dollars: Whereupon, and on consideration whereof, the court doth order, adjudge, and decree that the said William L. Hindman do pay the said surplus of nine hundred and seventy two dollars in the following manner and in the order of their priority of lien, to wit: *First*, that the taxes and fee-bills in the hands of the said John Slack, sheriff, to the amount of eighty nine dollars and thirty three cents, be paid; and *secondly*, that the said judgment in favor of the said John D. Young against the said Thomas B. Swann, amounting to six hundred and seventy eight dollars and five cents, be paid and satisfied; and, *thirdly*, that the residue of the said surplus be applied towards the payment of the said judgment in favor of the said John Slack, Sr., against the said Thomas B. Swann; and report to the court, *etc.*

"[A copy.]          Teste:     C. B. SMITH, Clerk."

"January 14th, 1889."

### PAPER K:

"Whereas, Thomas B. Swann executed a deed of trust to A. W. Quarrier, as trustee, conveying to said A. W. Quarrier a certain house and lot in which the said Thomas B. Swann formerly resided, situated at the upper end of Charleston, in the county of Kanawha and State of West Virginia, to secure to John D. Young the payment of three thousand dollars, with interest, as shown by the said trust-deed and the note or obligation therein mentioned, which said trust-deed bears date on the 23d day of April, in the year one thousand and eight hundred and sixty one and is of record in the County Court clerk's office of Kan-

awha county, Book U. page 616; and whereas the said A. W. Quarrier having departed this life, and the debt which said trust was executed to secure remaining unpaid, and William L. Hindman having been duly appointed by the Circuit Court of said county as trustee in said trust-deed, and substituted to all the rights, powers, duties and responsibilities of the said A. W. Quarrier, deceased; and whereas, the said William L. Hindman did, on the 11th day of June, in the year one thousand eight hundred and sixty four, in the front of the court-house door of said county, after due notice thereof being given as by law and said deed required, sell at public auction to the highest bidder, for cash, the said house and lot in said trust-deed conveyed, at which sale the said John D. Young became the purchaser of the said house and lot, paying therefor the sum of four thousand six hundred and fifty one dollars: Therefore this deed, made the eleventh day of June, in the year one thousand eight hundred and sixy four, between the said William L. Hindman, as trustee of the first part, and the said John D. Young of the second part, witnesseth that, in consideration of the said debt of three thousand dollars, together with five hundred and sixty four dollars interest thereon, and for the further consideration of one thousand and eighty. seven dollars paid in hand, the receipt whereof is hereby acknowledged, making in all the aggregate sum of four thousand six hundred and fifty one dollars above mentioned, the said William L. Hindman doth grant unto the said John D Young and his heirs all of that tract of land, house and lot, hereinbefore described and referred to —the said lot estimated to contain two acres more or less, and being the same conveyed by George W. Summers to the said Thos. B. Swann—to have and to hold forever, with covenants of special warranty; the said William L. Hindman conveying such title, and such title only, as is vested in him by the deed of trust hereinbefore described and referred to.

"Witness the following signature and seal.

"William L. Hindman, Trustee.	[Seal.]

"July the 25th, 1864. Kanawha County Recorder's Office. This deed was this day presented to me in this office, and

duly acknowledged by William L. Hindman, party grantor therein, and thereupon admitted to record.

"[A copy.]          Teste:      JOHN SLACK, Recorder.

"Teste: J. W. GOSHORN, Clerk Kanawha County Co."

After the foregoing deed had been executed by W. L. Hindman, as such trustee, to John D. Young, the trust-creditor, viz, on the 21st day of September, 1867, John D. Young and wife executed to his son, defendant John M. Young, a deed of special warranty for a certain part (about seven tenths) of the Summers two-acre lot, which deed was duly admitted to record, and is as follows:

(PAPER L:)

"This deed, made this 21st day of September, in the year 1867, between John D. Young and Elizabeth Young, his wife, of the first part, and John M. Young, of the second part, witnesseth: That, in the consideration of the sum of one dollar in hand paid, the said John D. Young and Elizbeth Young, his wife, do grant unto the said John M. Young a lot of ground situate in the town of Charleston, West Virginia, on East avenue, and bounded as follows: Beginning at the back corner on said avenue of a lot of land recently sold by said John D. Young to John Slack, Jr.; thence S., forty six ft. E., one hundred and fifteen feet, with Slack's line, to the line of Ellen N. Rand; thence, with her line, to the back corner of John D. Young; thence, with another line of said Ellen, to East avenue; thence along said East avenue, and binding thereon, to the beginning—estimated to contain about seven tenths of an acre, and being all the rest and residue of a lot conveyed to the said John D. Young by William L. Hindman, trustee *etc.*, except what has heretofore been sold by said John D. Young to said John Slack, Jr.; and being the same lot on which said John M. Young has recently erected a frame dwelling-house.

"Witness the following signatures and seals.

his
"JOHN  X  D.  YOUNG.   [Seal.]
mark

her
"ELIZABETH  X  YOUNG.   [Seal.]
mark

"Kanawha County Recorder's Office, October 3d, 1867. This deed was this day presented to me in this office, and duly acknowledged by John D. Young and Elizabeth Young, his wife, parties grantors therein; and the said Elizabeth being examined by me privily and apart from her said husband, and having the deed aforesaid fully explained to her, declared she had willingly signed and executed the same, and did not wish to retract it, and the same being duly stamped, fifty cents, was thereupon admitted to record.

"[A copy.]

"Teste: John Slack, Recr.

"Teste: J. W. Goshorn, Clerk Kanawha County Court."

Under this deed from his father, John D. Young, who departed this life intestate in the year 1870, defendant John M. Young, on the 21st day of September, 1867, took possession of that part of the Summers lot here in controversy as his own, and has so held and claimed it to this day.

Plaintiff, a citizen of Kanawha county, has resided continuously in the town of Charleston from the 13th day of May, 1865, to the present time, with knowledge of the deed, claim and possession of defendant John M. Young. In the year 1871 plaintiff brought in the Circuit Court of Kanawha county, on the chancery side thereof, a suit against defendant John M. Young and others to recover the said two acres; but for certain reasons, and by advice, he permitted this suit to abate; but on the 2d of May, 1871, he caused to be recorded the following *lis pendens:*

"LIS PENDENS:"

"T. B. Swann *vs.* Wm. T. Thayer, Milton Young, Norman Young, John Mark Young, John Mark Young, adm'r of J. D. Young, deceased, John Slack and Hattie, his wife, Elizabeth Young, Daniel H. K. Dix and America, his wife, W. L. Hindman, trustee, C. M. Quarrier, as executrix of A. W. Quarrier, dec'd. In chancery. Kanawha Circuit Court, W. Va. The estate of J. D. Young and of Mark Young and of Wm. T. Thayer is affected by this suit, and the object of this suit is to set aside an order of Kanawha Circuit Court appointing W. L. Hindman trustee, in the place of A. W. Quarrier, trustee, in a trust-deed on a lot of two acres of land in Charleston, adjoining the lot of Mrs.

Ellen Rand, and where she lives; which trust-deed was executed by T. B. Swann to secure a sum of money to J. D. Young, and is recorded in the recorder's office for Kanawha county; and to set aside a deed made by said Hindman, so-called trustee, to J. D. Young and his heirs, dated 18th day of June, 1864, for said two acres of land, house now occupied by W. T. Thayer and others, and which deed is recorded in the recorder's office for Kanawha county; and to set aside as void a deed for a part of said two acres of land from John D. Young and Elizabeth, his wife, to John Slack, dated 19th September, 1867, of record in said office; and also to set aside as void a deed from J. D. Young and Elizabeth, his wife, for a part of said two acres, dated 21st Sept., 1867, to Mark Young, recorded in said office; and also to set aside, as null and void, a deed dated 25th Sept.; 1867, from John Slack and Hattie, his wife, to Wm. T. Thayer, recorded also in said office, and conveying a part of said two acres of land. These two acres lie on East avenue and Front street, and adjoining the lands of Ellen Rand, about one mile above the court-house, and were purchased by complt. from Geo. W. Summers by deed recorded in the recorder's office for Kanawha county. T. B. SWANN, Kanawha County Recorder's Office. April 28th, 1871." "2nd May, 1871. This *lis pendens* was this day presented in this office by John S. Swann, and at his request the same is admitted to record.

"A true copy from the record.

"Teste: A. CUNNINGHAM, Recorder.

"Teste: J. W. GOSHORN, Clerk Kanawha County Court."

Plaintiff gives no reason, explanation or excuse for having slept so long upon his rights, unless it be this *lis pendens*, the suitor's test oath, which was repealed on the —— day of——1870, and that defendant has all along been aware of his continuous claim to this property. Plaintiff alleges that he could not take the several oaths referred to in the Acts of the Legislature of West Virginia of 1872-73, c. 28, § 1, p. 76. These are known as the "Suitor's Test Oaths," but he nowhere avers that defendant John M. Young could take these oaths.

The foregoing are the material facts as they appear in

the bill, and it is conceded, for the present purpose, that the order appointing W. L. Hindman trustee was invalid and wholly nugatory, and that he had no power or authority whatever to sell or convey the land in controversy to John D. Young. Yet there are two grounds either one of which is sufficient to justify the dismissal of the bill.

(1) It appears by plaintiff's own showing that defendant John M. Young has been permitted to hold the land in continuous actual adverse possession under the deed from his father for more than ten years—in fact, for more than twice ten years, in one view; for it is not alleged that defendant Young could take the suitor's test oath, and therefore the fact that plaintiff could not take it is immaterial.

(2) But, in any view, plaintiff, with a full knowledge of his rights, has, without excuse or explanation, slept upon them for not less than sixteen years according to plaintiff's view, for more than twenty years according to our view—more than three fourths the average life of one generation—so that it will soon be "above the remembrance of any living man truly to try and know the perfect certainty of such things." Chapter 2, Act 32, Hen. VIII. (1540.)

So that plaintiff's claim confessedly for the purposes of this case, at one time a good one, has been held back or neglected until it has become stale, with the presumptions of abandonment, by reason of permitting the suit of 1871 to abate, and delaying so long the bringing of another.

A suit in equity is not within the letter of the West Virginia statute of limitations except in two classes of cases not relevant to the matter here in issue; yet in a case like this, although of exclusive equitable jurisdiction in respect to the relief sought, and to which the plaintiff would be entitled, were it not for the ten years of adversary possession barring a recovery at law, a court of equity is as much bound to give such defence its legal effect as a court of common-law upon a trial of an action of ejectment; and this not by way of adoption or by reason of any analogy, but because it deals with a right of property created by the law of the land. Does such right exist in this case?

. John D. Young, the father, the tenant of plaintiff, conveyed to John M. Young, the son, in fee-simple by deed of

special warranty the land in controversy and put him in posse sion. In this State such a deed by the tenant, and posses ion by the grantee under it, with knowledge thereof certainly and definitely brought home to the landlord, has, somewhat the same effect as an actual disseisin under the common-law. It renders such possession adverse, which, if permitted to continue for ten years after knowledge of such disclaimer, will bar the landlord's better right, and will be just as effectual in a court of equity as in a court of common-law. *Wiseley* v. *Findlay*, 3 Rand. (Va.) 367 ; *Emerick* v. *Tavener*, 9 Gratt. 220. See *Willison* v. *Watkins*, 3 Pet. 43 ; Tayl. Landl. & Ten. § 522; Bigelow, Estop 477 ; *Campbell* v. *Fetterman*, 20 W. Va. 398 ; *Voss* v. *King*, 33 W. Va. 236 (10 S. E. Rep. 402.)

And a deed of special warranty, conveying the land in fee-simple, is just as good for such purpose as a deed of general warranty; it constitutes a colorable claim of title, showing the extent and character of the claim. It may have been voidable, if taken in proper time, in the sense of being set aside or removed as a cloud, or otherwise put aside or held for naught, but it would be impossible in the nature of things at any time to treat it as absolutely void in the sense of not constituting a claim of title. It may never ripen into a perfect title, but that will be for want of some other essential element of an adversary possession, such as the holding not being adverse, for example, and not because it does not constitute a sufficient colorable claim of title.

At this point it is not out of place to say something about a deed of trust under our statute, as compared with a mortgage; for the argument of the learned counsel for plaintiff seems to take it for granted that the two securities are the same in all essentials and incidents relating to the equity of redemption. In this State mortgages are not unknown, but their use is rare, compared with that of the deed of trust. See Code Va. 1849 (Ed. 1860) c. 117, § 5.

The deed of trust is a security, on land in this case, for the payment of a debt. The trust-debtor has conveyed his land to the trustee as a security for the payment of the trust-creditor's debt, and with the power in the trustee, if the debt be not paid when due, to sell and pay out of the

proceeds. The trust-creditor has not an estate upon condition like the old mortgagee in the time of Littleton. He has at no time, by virtue of his deed of trust, an estate of any kind. He has a chose in action, made a specific lien by contract and not by change of possession on a certain tract of land; and there never comes a time when he or his representative has more or other than that; nor has he, at any stage, the right to the possession, unless it is expressly given to him by the deed (a thing rarely done, and not done in this case) or a right to enter upon the land. The trustee has no right to the possession, until default be made in payment of the trust-debt, and then only for the purpose of making the sale or of preserving the property pending proceedings for the purpose of making a sale. Unless there is an express contract to the contrary, the trust-debtor is entitled to the possession of the land down to the sale or commission of waste or to the beginning of proceedings to make the sale. Like a mortgage, the debt secured is the principal thing; hence it is "that the doctrines relating to the deed of trust are by text-writers and by courts generally classified and explained under the head of 'mortgages.'"

Yet there are some points of disagreement, especially in regard to the equity of redemption. The equitable ownership of the trust-debtor is very often called an equity of redemption; but there are marked points of difference between it and the equity of redemption under a mortgage. In the case of a deed of trust there can be no forfeiture, and therefore, strictly speaking, no equity of redemption. None before the sale by the trustee, because it can not then arise; and, under our law, there is no such thing as an equity of redemption after sale. It is nothing more than the ordinary right of a debtor to pay his debt, which in this case is the discharge of a lien. So far as the sale by the trustee is concerned, it is an absolute sale to the highest bidder.

Following the case of *Cholmondeley* v. *Clinton*, 2 Jac. & W. 1, we often say, in analogy to a mortgage, that, if the trust-creditor is permitted to remain in possession for twenty years without any recognition of the mortgage, the debtor's equity of redemption is barred, in analogy to

what was then the bar of the right of entry; and that, if the debtor is permitted to remain in possession twenty years without payment of interest, the creditor's right of entry is gone.

All this is misleading as to a deed of trust, because the trust-creditor has no right of entry to be barred, but he has a specific lien on the land, which after the lapse of twenty years is presumed to be paid or otherwise discharged; and, if the trust-creditor should be found in possession without any right to it expressly given by the deed of trust, he would be presumed to be in as the owner by purchase under the trust-sale, or in any other way open to explanation according to the facts, and not as one who had exercised a right of entry after default had been made in the payment of the debt.

In this case the trust-creditor was in possession, not as an incident of any right of his under the deed of trust, but under a distinct verbal agreement to live on and save the property for plaintiff during the war as his tenant. But when plaintiff returned to his home, on the 13th day of May, 1865, he found John D. Young, his tenant, in possession claiming it as his own, with intent to hold it adversely to plaintiff and to all the world, under a deed from Hindman, trustee, which amounted to nothing in respect of giving Young any title, or investing him with any estate, but did amount to a colorable claim of title showing the extent and character of his claim of ownership. See *Cooey* v. *Porter*, 22 W. Va. 120. It showed distinctly that he disclaimed to hold as the tenant of plaintiff, and knowledge of this was brought home to the plaintiff clearly, distinctly and beyond all question; and, while it could not put plaintiff to proof of his title, because John D. Young had entered under him, yet his possession was adverse, and his actual possession as such fee-simple claimant began to run from the date of plaintiff's actual knowledge thereof, as shown by many cases. *Campbell* v. *Fetterman*, 20 W. Va. 398; *Voss* v. *King*, 33 W. Va. 236 (10 S. E. Rep. 402); *Cooey* v. *Porter*, 22 W. Va. 120.

Taking the view that the rule laid down in *Cholmondeley* v. *Clinton*, has no application, even if the court were called

upon as a court of equity to deal with a purely equitable right as regards defendant, still I would be compelled, at this late day, to deny plaintiff the remedy he seeks; because, so far from showing any ground of excuse or justification of his long delay, what he does allege—the whole tenor of his bill—tends to show that no such excuse or justification exists in fact. He shows by his allegations, supported by the *lis pendens* of a former suit filed as proof, that in the year 1871 he brought such a suit as this one on the same state of facts, and praying the same relief as he now and here asks. This suit he permitted to abate, and his rights to sleep. If he had signed, sealed and delivered to John M. Young a formal deed of release and confirmation with the efficacy of a grant, if needed, it would scarcely speak with more significance, in consideration of the maxim that there should be an end of litigation and the policy of quieting the possessor's right. Possession of land is *prima facie* evidence of ownership. The strength of the presumption is greatly increased by length of time of enjoyment, and the absence of interruption or disturbance from others, who, supposing it to be illegal, were interested in putting an end to it. It is to the interest of the commonwealth that there should be an end of disputes, and that the possessor should be quieted in his title; and, to render his title accompanied by long possession complete, all things necessary may be presumed. The law comes to the help of those who are vigilant, and not to those who sleep on their rights. So that the presumption of right is in defendant John M. Young, who has had actual possession under his deed ever since 19th September, 1867. Such possession is highly favored, it is said, in every system of jurisprudence, and such favor seems to rest partly on principles of natural justice, and partly on public policy. Bish. Prin. Ev. (Chamb. Am. Ed., from 7th Eng. Ed.) § 366.

The plaintiff's claim, however rightful at first, is in the very teeth of these presumptions now. The gist of plaintiff's claim to relief, as I understand it, is that he is a *quasi* mortgageor, with an equity of redemption which is good for twenty years; that he could not take the suitor's test oath, and twenty years have elapsed from the 6th February,

1873, to the bringing of this suit; and that defendant's possession can not, in contemplation of law, be adverse.

If there was never any sale under the deed of trust, or a sale "void," as distinguished from "voidable," he had no equity of redemption, in the sense here involved, because there had been no sale, and there could by no possibility be a forfeiture, either presumptively or in fact. There was the right to pay the trust-debt, and thereby relieve his land from the deed of trust lien, for any length of time, if he, by himself or another, were in possession and saw fit to do so. If there had been a regular and proper sale under the deed of trust, he could have no equity of redemption, for the statute precludes any such right. If the sale was irregular, or for any reason voidable in a court of equity, he has no equity of redemption, in the true sense, but the right to pay, if he uses proper diligence to have the sale set aside. But this has no reference or analogy to the period of twenty years followed in our State, notwithstanding the change in the time of bar to right of entry or action of ejectment.

But the insuperable objection to plaintiff's claim is that before the bringing of his suit it had been barred by defendant John M. Young's adversary possession.

(1) John M. Young had color of title, because his deed showed the nature and extent of his claim.

(2) His possession was actual, because it had upon it visible marks of ownership by use and occupation, such as any one, at any time, could see who saw fit to pass that way.

(3) Out of abundant caution I have treated it as though it were not adverse in its inception, by reason of the relation of landlord and tenant, which for a time, at least, had existed between plaintiff and his vendee. But, however it may be elsewhere, it is settled law in this State that a tenant, in order to assert his adverse claim against his landlord, is not compelled first to restore the possession, but may disclaim to hold under the landlord, and claim under his own colorable title, and his possession will be adverse from the time that notice of such disclaimer is certainly and unequivocally brought home to the landlord; but he can not dispute the landlord's title, in the sense of putting him to the proof of it, because he entered under it. But, even with

this qualification such privilege is obviously liable to great abuse, and should be subjected to the most rigid scrutiny and strictness of proof that knowledge of the disclaimer has been brought home to the landlord.    But in this cause there can be no question, because plaintiff alleges that John M. Young occupied the lot under his deed for himself, and to the exclusion of everybody else, and that it was with plaintiff's knowledge.

(4) It is not necessary for the adverse occupant to believe his own title to be good, but it must be honest, in the sense of not being fraudulent, or of involving any breach of trust during the time that the statute runs ; for it may, and generally does, begin in wrong of some sort.

(5) It must be "continuous" and "uninterrupted" for the period of (ten years, by our law) prescribed by the statute —"continuous," in the sense of not being abandoned by himself; "uninterrupted" in the sense of not being effectively broken by another—but, being once proved, it is presumed to continue until the contrary appears, and abandonment is not to be inferred from slight or equivocal acts.    This is substantially the analysis made in our cases since *Taylor* v. *Burnsides*, 1 Gratt. 165.

But, in practice, pleading and proof, the question is seldom, if ever, presented in this formal way; it is enough if the possession can be fairly shown to contain these elements, no matter what language the witness may use, or how the facts may appear.    There is no question in this case that defendant John M. Young held the land in controversy continuously, and without interruption, for more than ten years prior to the bringing of this suit; so that plaintiff's right is not only barred, but defendant's claim is made perfect; and this appears on the face of plaintiff's bill; therefore the decree of dismissal must be affirmed.

AFFIRMED.