# CHARLESTON.

## HIGH'S HEIRS v. PANCAKE.

Submitted September 3, 1896—Decided Dec. 5, 1896.

1. PARTITION—STRANGERS TO SUIT.

   A decree of partition can not have the effect of showing title in the parties to it, as against strangers to the suit and its parties.

2. TRESPASS—*Quare Clausum Fregit*—ACTUAL POSSESSION—CONSTRUCTIVE POSSESSION.

   To sustain trespass *quare clausum fregit*, the plaintiff must have constructive possession emanating from legal title, or he must have actual physical possession.

3. DECLARATIONS OF DECEASED OWNER.

   Declarations of dead owner of land as evidence against those claiming under him.

4. DECLARATIONS OF DECEASED OWNER—LANDMARKS—DECLARATIONS FROM INTEREST.

   Declarations of a former owner of land, now dead, are admissible to show the identity of a particular corner tree or other corner or marked boundary line; but not a mere general statement or claim that certain land was in his boundary, or where the lines would run, or that he owned the land, without reference to any corners or marked lines. If it appear that such declarations are subject to suspicion of bias from interest, they can not be received or made *post litem motam*.

5. DECLARATION OF DECEASED OWNER—TITLE—POSSESSION.

   Such declarations of a deceased owner are not competent evidence to prove that he had title, or to prove possession.

6. DECLARATIONS OF ONE IN POSSESSION—EXPLANATORY DECLARATIONS.

   Declarations of one in actual possession of land, explanatory of the character of his possession—that is, for instance, how he claimed, under what title, and to what limits—are admissible.

7. EVIDENCE—CERTIFICATE OF LAND ENTRY.
    Certificates of clerk of county court as to the entry or non-entry of land on the tax books, and other certificates specified in section 5a, chapter 130, Code, are made admissible evidence by it, but must be filed and notice given prior to trial for the period of twenty days, required by the statute.

8. DECLARATIONS AGAINST INTEREST—DISCLAIMER OF TITLE.
    Parol disclaimer of title.   Declarations against interest.

R. W. MUNROE for plaintiffs in error, cited 23 Gratt. 504.

H. B. GILKESON for defendant in error, cited 14 W. Va. 561; 28 W. Va. 35; 35 W. Va. 560; 36 W. Va. 451; Code, c. 130, s. 5a; 1 Greenl. Ev. § 498.

BRANNON, JUDGE:

Harriet High and others instituted an action of trespass *quare clausum fregit* against Joseph A. Pancake to recover damages for cutting timber and taking tan bark from a tract of land claimed by plaintiffs; and the court having excluded the plaintiffs' evidence as insufficient to support the action, the plaintiffs obtained this writ of error.

Under the pleadings, it fell upon the plaintiffs to show their title to the land.   They claim as the fountain of their title a patent from the state of Virginia, in 1801, to Hugh Holmes, for three thousand and five hundred and fifty acres on South Branch Mountain, in Hampshire county; but they have not connected themselves with it.   Nothing passing title from Holmes to anybody is shown.   The burden was on the plaintiffs to show the defendant a trespasser, and, until such showing, he was called on to show nothing.

We are asked to assume that this land passed in some way from Holmes to David Parsons and James Dailey, and was divided between Parsons' and Dailey's heirs, because we are shown a decree dividing it in 1847 between them; and we are asked to find from it that said land patented to Holmes vested in Parsons and Dailey, on a theory that, as a prerequisite to partition, the court must have found such title to be in them, as equity will only decree partition when the title is clear.   This doctrine applies as to those

asking partition.  But, when there is no controversy as to title between parties to the partition, the court does not trace the title *ab ovo*, but treats it as a *concessum*.  We could not give this record the force of showing title as against Pancake, a stranger to it.  Freem. Coten. § 529.  And, if we could give the decree such effect, the trouble arises that we can not say even then that it divided this land, for it divides "the lands in the bill mentioned and described," without further description, and the bill is not in evidence. We can not identify the land as the Holmes land.  It does not prove that it was the Holmes land that was divided. That would be a mere guess or assumption.  It is said that this partition gave Dailey's heirs half the Holmes tract, and that then this half was sold under decree in a case of Entler's executors against Dailey's administrators, for the debts of Parsons, and purchased by Angus W. McDonald; but this decree sold "a moiety of three thousand and four hundred and fourteen acres of mountain land in the county of Hampshire, belonging to the heirs of James Dailey," a description utterly indefinite, and not agreeing in amount with the Holmes tract.  We are without anything but the decree in this second case.  No deed to McDonald from the court appears.  He made a deed to Henry M. High for his interest in "a tract of land situated in the county of Hampshire, being the same and all the land conveyed to the said Angus W. McDonald by Reuben Davis, Sheriff, by deed of bargain and sale, being dated the 10th day of July, 1848," giving no other description.  Reuben Davis is the sheriff who sold under the decree; and, while the McDonald deed recites a deed from the sheriff to McDonald, none is shown. This recital would not prove its existence against a stranger, as recitals in deeds do not bind strangers.  Section 5, *McDodrill* v. *Lumber Co.*, 40 W. Va. 565 (21 S. E. 878). And it recites a deed made 10th July, 1848, whereas the sale was not confirmed and a deed directed until 20th September, 1852; so that unless we merely guess a mistake in reciting the date of the deed, if we could say there was one, it must be a deed for other land, for the court would not order the sheriff in September, 1852, to convey land already conveyed in 1848.  It does not appear that the sheriff sold

McDonald any part of the Holmes tract, or that McDonald conveyed any part of it to High, under whom the plaintiffs claim. We are not told what land he sold. The pretensions of the plaintiffs that they thus derived the Holmes land may be true; but it is mere suggestion or claim, not sustained by evidence. Papers to show this claim are absent, it is said, because they were destroyed in the loss or destruction of the records of the Virginia general court and of the circuit court of Hampshire county in the late Civil War. So, it is clear that the plaintiffs have not shown paper title.

Then, did High, the ancestor of the plaintiffs, get title by possession? What has been said would negative this claim, as he had no written title to make color of title. If he had such adverse possession as to give title by possession, he had nothing to give its extent beyond actual inclosure. But had he possession of a single acre or foot of such character as in law would confer title to what was so in possession? He had not. There was an "improvement" of a few acres of cleared land within the boundary of the large tract of about nine hundred acres of wild, unimproved land claimed by plaintiffs, and about one mile from the land in controversy, where the alleged trespass occurred, made about forty five years ago by Jacob Shockey. Under what title or how Shockey claimed does not appear. It seems to have been abandoned before the war, and Henry M. High, some years before the war, put Jesse Spurlock on it, and took some apples from it, and drove hogs upon it to eat the mast. How long Spurlock remained on it does not appear, but it in no wise appears that such possession continues. And this is all shown to support title acquired by possession. Possession with claim of title must be open, notorious, and continuous. Mere claim of ownership without the requisite possession will not do. The acts of High do not constitute such open, actual, notorious, and continuous possession as gives title even to that small improvement; and, if it would give title to that, it would be limited to it, as he had no paper to constitute color of title, and define boundary, so as to extend his possession beyond the improved land. *Jarrett* v. *Stevens*, 36 W. Va. 445, 451

(15 S. E. 177); *Swann* v. *Young*, 36 W. Va. 57 (14 S. E. 426); *Oney* v. *Clendennin*, 28 W. Va. 35.

The plaintiffs did not show a paper title, so as to give them that constructive actual possession which would enable them to maintain the action of trespass; nor were they in actual physical possession, constituting, as an element of title, *prima facie* evidence of title, so as to maintain that action. *Wilson* v. *Phenix Co.* 40 W. Va. 413 (21 S. E. 1035). Therefore evidence of a trespass would not have been admissible, but none was offered.

There was not a bit of evidence to show that the defendant entered upon the close of the plaintiffs. This would alone warrant the exclusion of the plaintiffs' evidence.

Exception was taken to the rejection of certain evidence tendered by the plaintiffs. The plaintiff proposed to ask a witness, Whiteman, who said he had often been on the land claimed by plaintiffs with Henry M. High, what High told him when on the land about its boundaries, whom it adjoined and what he said about its ownership or claim to the land, and whether he ever pointed out the lines or boundaries and how he claimed it, from whom he bought it, and whether he had any paper title to it. High was dead. This evidence was meant to answer several purposes: (1) to prove that High had paper title; (2) to prove that he claimed possession beyond the improvement to the extent of the whole tract claimed by the plaintiffs; (3) to prove the fact of actual possession; (4) to identify the land—that is, that this particular land was the same referred to in the deed from McDonald to High; (5) to prove boundaries of the land.

Upon the admissibility of declarations of deceased persons as evidence in land controversies, there is a large volume of law, and it is somewhat confused; and unless we examine it with an eye open to the purpose for which it is designed, we shall misunderstand and misapply it. The admissibility of such evidence depends upon the purpose for which it is to be used. I shall not speak here of declarations of fact of a dead owner prejudicial to his own title as against his heirs or alienees, further than to say they seem to be competent, unless made after parting with the

land. *Crothers' Adm'r* v. *Crothers,* 40 W. Va. 169 (20 S. E.
927;) *Padgett* v. *Lawrence,* 40 Am. Dec. 232 and note; *Pike*
v. *Hayes,* 40 Am. Dec. 171; *Deming* v. *Carrington,* 30 Am.
Dec. 591, and note. Mere oral declarations to destroy title
are inadmissible, because parol disclaimers can not affect a
vested title in the face of the statute of frauds. *Suttle* v.
*Railroad Co.* 76 Va. 284; *Jackson* v. *Davis.* 15 Am. Dec.
451, 459. Mere opinion of the title is not admissible. In
this instance the declarations are offered to support and
advance the title claimed under the former owner, declar-
ant. Nor do I refer to that which is a distinct feature—
the admissibility of traditionary evidence, evidence of rep-
utation to prove a particular corner or line tree, or boun-
dary of a private survey. I do not think the declaration
of a deceased owner can be shown to prove he had paper
title. The documents must be shown. High's declaration
was not competent for that purpose. *Cline's Heirs* v. *Ca-
tron,* 22 Gratt. 378, point 4; *Masters* v. *Varner,* 5 Gratt. 168.
I think that such declarations of one in possession, explana-
tory of the character of his possession, and as to what extent
he claims, are admissible. *Reading* v. *Weston,* 18 Am. Dec. 89.
One in possession under color of title claims to its extent, and
a declaration of his that he does so claim, and that he holds
and claims under his title, would be admitted. So, a ten-
ant of another in possession can declare under whom he
holds, and after death his declaration may be proven.
Therefore, if High had had any document defining boun-
dary, his declaration would have been good to show a
claim correspondent with its boundary and under it; but
he had not, and I do not see under this head, anything to
admit his declaration as to his claim of possession. Such
declarations can not be received to prove merely the fact
of his possession. That can not be proven merely by his
declaration.

The next question is whether High's declarations were
admissible to indentify the land he claimed, and to prove
boundary—practically, if not identically, one and the same
question. I shall not discuss the doctrine of the allowance
of declarations of surveyors or chain carriers touching corn-
er or line trees made by them, of which they had actual

knowledge. See *Overton's Heirs* v. *Davisson*, 1 Gratt. 211; *Smith* v. *Chapman*, 10 Gratt. 445. I refer to the right to give in evidence declarations of a dead former owner touching his boundary, merely because he was such owner. To an extent such declarations are evidence. In *Harriman* v. *Brown* 8 Leigh, 697, and *Hill* v. *Proctor*, 10 W. Va. 59, the general rule is stated that declarations as to the identity of a particular corner tree or boundary, made by persons since deceased, who had peculiar means of knowledge of the fact, as, for instance, the surveyor or chain carrier upon the original survey, or the owner of the tract, or of an adjoining tract calling for the same boundary, and also tenants, processioners, and others, whose duty or interest would lead them to diligent inquiry and accurate information as to the fact, always excluding declarations liable to the suspicion of interest, are competent evidence. These cases would allow declarations merely because the declarants were owners, because of their interest and opportunity to ascertain the facts and their various means of obtaining information; and they have support in other states. See *Coate* v. *Speer*, 15 Am. Dec. 627, and note; note to *Putnam* v. *Fisher*, 36 Am. Rep. 749; *Wood* v. *Foster*, 85 Am. Dec. 681; note to *Deming* v. *Carrington*, 30 Am. Dec. 595. Some of the cases hold that, to admit such declarations, the owner must be in possession, and make them on the land, and in pointing out the corners or lines as declarations accompanying an act. *Whitney* v. *Bacon*, 69 Am. Dec. 281, and notes cited above. Our cases do not seem to require this. But it can not be that every declaration of such owner is admissible; not his mere general statement or claim that such and such land is within his boundary, for that may be merely the claim of self interest, or his own inference or opinion from what he knew. We are not to reject a declaration because it may be inspired by self interest or bias, unless the same appear; but we must have a declaration establishing a fact, as a corner tree or particular marked line, not simply a statement that the land is within his boundary or the same conveyed in a certain deed, or that a line would cross a creek at a certain point, without more. It would be like the case of *Smith* v. *Chapman*, 10 Gratt. 445, where statements of a dead chain

carrier as to corner and line trees were admitted, but his statement as to the locality of the land, and the streams which the lines would cross, were rejected, because mere opinions of the chain carrier from facts which he supposed to be within his knowledge, but not given. The statement must be as to a particular fact, a corner or line tree, or something equivalent, as held by Judge Lee in *Clements* v. *Kyles*, 13 Gratt. 477, 478. Reflect that such evidence is not allowable under rules of evidence generally, being self serving and mere hearsay, but is an exception under our and some other decisions, and, to be admitted, must fall clearly within the bounds set out by our two decisions above cited. Then, under these principles, is this evidence of High's declarations competent? I think it was most general in character, as it specified no particular declaration, and was incompetent, except the inquiry whether High pointed out to him the boundaries. Likely, this was a proper question, if the plaintiffs had any documentary title giving any boundary to be identified; but they had not. The same may be said as to the evidence of William Spurling.

As to evidence of Kercheval: He said he had been years ago employed by Pendleton, a landowner, and had in his hands certain papers, including a copy of the Holmes patent, and that he had examined the titles, and had ascertained the location and boundaries of the Holmes tract; whereupon plaintiff's counsel asked Kercheval, "for the purpose of aiding his claim of title and possession of the land in controversy, and of identifying it," to state what he so ascertained, and who were holding or claiming title to said land at that time, and this was rejected. Plainly, this was inadmissible, as it called for the mere opinion of a lawyer, based on examination of papers, and on facts before him, he possessing no peculiar means of knowledge, only his inferences and deductions on, perhaps, an incomplete, unreliable state of facts.

A witness, Bizer, stated that he had heard the tract called the "Parsons and Dailey Tract" many years ago, and understood it was divided between Parsons' and Dailey's heirs, and was present when a sale of the Parsons interest was sold and purchased by High; and it was proposed to

prove by him that the auctioneer represented the tract to be the upper end of the Parsons and Dailey survey, and that he lived near it, and always understood that High owned and controlled the tract, and the court refused to admit his evidence. The declaration of the auctioneer was not admissible. What peculiar means of knowledge had he? Why receive his declarations? On what was his statement based? It was mere hearsay evidence. Bizer's statement that he "understood" that High claimed and controlled the land was simply and only the merest hearsay.

The plaintiffs proposed to ask one Johnson whether High had shown or pointed out the body of the land claimed by him, and whether he told him where the east lines were, and whom he claimed to adjoin on that side. The court refused to allow it, and properly, because it was too general. It did not seek to prove any tree, line, or other object, as required by the principle of *Harriman* v. *Brown.* It asked a declaration from High which was a mere claim—an opinion as to where his land lay, without any reference to particular corners, lines, or other boundary mark. It would be irrelevant, too, for want of a title paper giving boundary to which the proposed evidence could apply.

The court refused to admit as evidence a certificate of the clerk of the county court, certifying that he found no large tract or tracts of land charged on the tax books to James Dailey's heirs and David Parsons, except the land charged as lying on South Branch Drains and South Branch Mountain. This was to show that the interest of Dailey sold to McDonald, to a "moiety" of a large tract of mountain land, could be referred to no other than the tract partitioned between David Parsons' and Dailey's heirs. This is so remote and inferential as an item of evidence as to be hardly competent. But the certificate had not been filed for the time required by Code, c. 130, s. 5a, and was for this reason properly rejected. That certificate would be admissible only under statute, because it is hearsay, or the clerk's finding from the tax books. 1 Greenl. Ev. § 498. The statute admits such certificates, but you must conform to its requirements as to filing. You can not surprise the other side by suddenly springing such evidence at the trial.

The plaintiffs, to identify the land purchased by High of McDonald, and maintain their claim of possession, offered to give in evidence certain "tax receipts paid by High." It is at once an answer to this exception that we have no tax receipts before us, as they are not made part of the record. To what property do they relate—real or personal? If land, what land? Tax receipts may show claim, but not possession. And, as to the object of identifying land, we do not know what land they relate to. You can not show title by tax receipts.

But suppose any of the excluded evidence was admissible. There would be no reversible error. There was no evidence whatever to show that the defendant entered any close, or by cutting timber or taking tan bark or other act, committed any trespass, and, had this rejected evidence been in, there could have been no recovery. An error to reverse must aggrieve a party. Therefore we affirm the judgment.