# CHARLESTON.

## Voss, *et al.* v. King.

### *(Green, Judge, Absent.)

Submitted September 9, 1889.—Decided November 20, 1889.

1. LANDLORD AND TENANT—TITLE—ESTOPPEL.

     In an action by the landlord against his tenant, whether the action be debt, assumpsit, covenant, or unlawful detainer, where

neither fraud nor mistake is shown in the procurement of the lease, no proof of title is required by the landlord ; for in such case the tenant is estopped from denying the title of his landlord.

2. LANDLORD AND TENANT—LEASE.

If a tenant takes a secret lease or conveyance for the land from a third party claiming to be the owner, without the knowledge of his landlord, the character of his possession will not be changed.

3. PARTIES—CO-TENANTS—UNLAWFUL DETAINER.

One joint-tenant or tenant in common may, in an action of unlawful detainer recover the possession of the whole land without joining his co-tenant in the action.

4. WITNESS.

Under our statute, sec. 23, chap. 130, Code 1887—a party is a competent witness to testify in his own behalf in respect to a transaction or communication had personally between him and the agent of the deceased person, against the personal representative, heir or assignee of such deceased person, notwithstanding such agent is then dead.

5. LANDLORD AND TENANT—LEASE—TITLE.

A person, who, *while in the possession* of land, accepts a lease therefor from one claiming to be the owner, may, after his term expires, by disclaimer and notice to such person, terminate his tenancy ; and he will not in such case be required to surrender the possession before he will be allowed to set up an adverse title in himself or a third person.

*J. Brannon* and *J. H. Woods* for plaintiff in error.

*L. D. Shrader* and *C. W. Russell* for defendant in error.

SNYDER, PRESIDENT :

Writ of error to a judgment of the Circuit Court of Randolph county, pronounced May 26, 1888, in an action of unlawful detainer in which Joseph H. Voss, Susan G. Elder and Sophy S. Showard are plaintiffs, and Patrick King is defendant.

The action was commenced on December 14, 1886, to recover from the defendant the possession of a tract of 1,000 acres of land in Roaring Creek district in Randolph county, and fully described in the summons. The case was tried by jury on the issue of not guilty, and a verdict was returned in favor of the plaintiffs for 207 acres, a part of the land

---

*On account of illness.

described in the summons. The defendant moved the court to set aside the verdict upon sundry grounds set out in six several bills of exceptions, and because the same was contrary to the evidence, which motion the court overruled and the defendant excepted.

The first bill of exceptions, which contains all the evidence, shows that in 1857, Benjamin Voss and Robert S. Voss brought an action of unlawful detainer against the defendant King, in which there were, on August 25, 1869, a verdict and judgment for the said plaintiffs for the 222 acres of the land, in the summons in said action mentioned and described; that the land now in controversy is a part of the said 222 acres; that the plaintiffs and one William Voss are the heirs at law of said Benjamin Voss, who died intestate in the year 1885; that the plaintiffs, by deed dated Oct. 5, 1886, had acquired title to the interest of said William Voss in said land; that no writ of possession had ever been issued on said judgment in favor of said Benjamin and Robert S. Voss; that on July 18, 1870, the said Benjamin Voss, by David Goff, his agent, and the defendant, Patrick King, entered into the following lease or agreement:

" The said Voss, by his agent aforesaid, doth rent to the said Patrick King about 200 acres of land from this time to the 1st of April, 1876, at the sum of five dollars per annum, to include the land where said King resides, and includes the land purchased by said King of A. J. Smith, with the following exceptions, about seven or eight acres reserved, to wit, that part on which Michael King resides and all the land west of Michael's house with the fence of said Patrick, to the line running about north and south. At the time said rent ends if said Patrick wants to purchase said tract, he is to have the refusal."

That in the year 1886, the plaintiff Joseph H. Voss went to the defendant on the said 207 acres of land and demanded of him a renewal of his lease or the surrender to the plaintiffs of the possession of said land; that the defendant declined to do either, and stated to said Joseph H. Voss that he claimed under other persons, and this was the first notice to said Voss ever had of such claim, or that the defendant disclaimed holding under the plaintiffs; and there was also

evidence tending to prove that the defendant was, at the time the summons issued and the rendition of said judgment, in the possession of the 207 acres mentioned and described in the verdict. After the foregoing facts had been proved by the plaintiffs, the defendant offered to prove that in the year 1856 he entered on the 207 acres of land in controversy under Col. Augustine J. Smith, and had continued in the possession thereof up to the present day; that on the day following or the next day after the rendition of the judgment in the beforementioned action of Benjamin and Robert S. Voss against him, the defendant was preparing to move off the said land with his family, when one O'Donnell, a son-in-law of said Col. Smith and the agent of his heirs, came along and proposed to lease to defendant the land in controversy on which defendant was then living, and thereupon he and the said O'Donnell entered into a written agreement, dated August 27, 1869. The defendant then offered to read said written agreement in evidence, and to prove its execution, but upon objection by the plaintiffs the court refused to permit the defendant to prove any of said facts or to read said agreement to the jury, to which ruling of the court the defendant excepted.

The said agreement is copied in the record and it purports to be a lease of about 200 acres of land, the same claimed by Benjamin and Robert Voss, made by O'Donnell as the agent of the Smith heirs to the defendant for one year commencing August 27, 1869, for the consideration of one dollar, and binds the said O'Donnell to protect King in the full and peaceful possession of said land. The plaintiff in error insists that the court erred in rejecting said agreement and the proof offered as aforesaid. It is evident that this evidence was rejected on the ground that a tenant in possession under a lease is not permitted to dispute the title of his landlord. This as a general principle of law is well settled both in England and this country. *Wood* v. *Day,* 7 Taunt. 646; *Cooke* v. *Loxley,* 5 T. R. 4; *Codman* v. *Jenkins,* 14 Mass. 95; *Graham* v. *Moore,* 4 Serg. & R. 467; *Wilson* v. *Smith,* 5 Yerg. 379; *Willison* v. *Watkins,* 3 Pet. 43.

In an action by the landlord against his tenant, whether the action be debt, assumpsit, covenant, unlawful detainer or

ejectment, no proof of title is required by the landlord, since if the tenant has once recognized the title of the plaintiff and treated him as his landlord, by accepting a lease from him or the like, he is precluded from showing that the plaintiff had no title at the time the lease was granted ; for it is a general rule that the tenant shall never be permitted to controvert his landlord's title, or set up against him a title acquired by him during his tenancy, which is hostile in its character to that which he acknowledged in accepting the demise.　And this rule extends to a tenant holding over, as well as to an under-tenant, assignee, or other person claiming under the lease; and is applicable to every species of tenancy, whether for years, or from year to year, at will, or by sufferance.　As a tenant is not permitted to resist the recovery of his landlord, by virtue of an adverse title acquired during the tenancy, if he takes a lease from a third person, it is void, and can not work an adverse possession against his landlord; for the possession of a tenant is the possession of his landlord.　Nor can he render his possession adverse, except by a disclaimer and the assertion of an adverse right brought home to the knowledge of the landlord.　If he takes a secret lease or conveyance for the land from a third party claiming to be the owner, without the knowledge of his landlord, the character of his possession will not be changed.　So an adverse claimant, who gets into possession of land by tampering with the tenant, can not resist the landlord's claim where the tenant himself could not.　But the rule that a tenant is precluded from denying the title of his landlord is not to be extended so as to estop him from denying the validity of rights which had no existence when he took possession. For example, the tenant may show, that, although the landlord had an interest in the premises at the time of the making of the lease, his interest terminated before the alleged cause of action arose.　The tenant will be estopped from denying only what he has once admitted. 2 Taylor's Land. & Ten. §§ 629, 705 ; *Emerick* v. *Tavener,* 9 Gratt. 220 ; *Oakes* v. *Munroe* 8 Cush. 282; *Hawes* v. *Shaw,* 100 Mass. 287; *Ryerson* v. *Eldred,* 18 Mich. 12; *Jackson* v. *Miller,* 6 Cow. 751 ; *Stewart* v. *Roderick,* 4 Watts & S. 188.

This doctrine was unknown to the common law, and is an

estoppel *in pais.* The only tenant's estoppel known when Lord Coke wrote was that strictly by indenture. But the tenant's estoppel is now no longer thus restricted, as it is founded on the possession and not the instrument of demise, and is as operative after the conclusion of the lease as before, and until that possession is ended. It is only when there is fraud or mistake, in consequence of which one takes a lease of land, that he will not be estopped by. the lease. Taylor's L. & T. §§ 89 and 707; Big. on Estop. 350; *Camarillo* v. *Folsom,* 49 Cal. 202; *Alderson* v. *Miller,* 15 Gratt. 279; *Locke* v. *Frasher,* 79 Va. 409; *Dobson* v. *Culpepper,* 23 Gratt. 352.

According to these principles, which are well settled, there can be, it seems to me, no question that the court properly excluded the evidence offered as aforesaid by the defendant. By taking the lease of July 18, 1870, from the plaintiffs, he acknowledged their title and repudiated the claim of the Smith heirs, under whom he offered to prove he had entered and was then holding the premises. There was no attempt to show either fraud or mistake, as a consequence of which he executed the lease to the plaintiffs' ancestor. On the contrary the facts proved show, that there was neither. He knew that the Smith heirs claimed the land, and he knew that they were claiming adversely to the plaintiffs. The object of the defendant was, evidently, to hedge his possession by becoming the tenant of both the plaintiffs and the Smiths. But by doing so he placed himself in a position that he could not deny or question the title of either the plaintiffs or the Smiths, because by taking leases from each he became the tenant of both, with all the consequences attaching to that relation. But this would not enable him to protect his possession against either by asserting an adverse possession under the other. Both were his landlords, and he could dispute the title or possession of neither. *Bowdish* v. *Dubuque,* 38 Iowa, 341; *Lucas* v. *Brooks,* 18 Wall. 436. Either could dispossess him under the same circumstances that he could. do so if he was the only landlord. The doctrine announced in *Franklin* v. *Merida,* 35 Cal. 558 (95 Am. Dec. 129), that when a tenant already in possession of the premises accepts a lease from one claiming to be the owner, he will not be estopped to

deny the title of such claimant, is not law in this State. It is only where a person in possession has been induced by *fraud or mistake* to believe that another has title when he in fact has none, and upon that belief accepted the lease, that he will not be estopped. 2 Min. Inst. 687; *Emerick* v. *Tavener*, 9 Gratt. 220; *Alderson v. Miller*, 15 Gratt. 279. But the facts here would not exempt the defendant in this case from the general rule, even if the California doctrine was law. When the defendant here accepted the lease there was a judgment against him for the possession of the land, which could at any moment, and doubtless would, have been enforced against him. Therefore, by taking the lease he avoided and the plaintiffs abandoned the execution of said judgment. For these reasons, I am clearly of opinion that the court did not err in rejecting the said agreement and evidence offered by the defendant and set out his first bill of exceptions.

The second bill of exceptions shows, that the Court refused to permit the defendant to produce to the jury other evidence of the same character as that above considered, tending to dispute the title of his landlord. Upon the ground before stated this was not error.

The third bill of exceptions relates to the refusal of the court to permit the defendant to read to the jury a deed from which it appears, that, in September, 1838, the land in controversy had been conveyed to Benjamin and Robert S. Voss jointly. The purpose of this evidence seems to have been to show, that the plaintiffs, who claim under Benjamin Voss only, had but an undivided half interest in the land; and as a consequence it was, perhaps, supposed the plaintiffs were not entitled to recover the possession of the whole land. This, however, is not so; because one joint-tenant or tenant in common may, in an action of unlawful detainer recover the possession of the whole land without joining his co-tenant in the action. *Allen* v. *Gibson*, 4 Rand. 468; *Treat* v. *Reilly*, 35 Cal. 129; *King* v. *Bullock*, 9 Dana 41.

The fourth and fifth bills of exceptions show, that the defendant offered to prove by himself as a witness, that in the year 1876, about the time the lease hereinbefore mentioned from Benjamin Voss to the defendant expired, David Goff

as the agent of said Voss called upon the defendant to renew the lease, and he declined to do so, and then stated to said Goff that he did not recognize the title of said Voss and would not hold under him. It was admitted that Goff was the agent of Voss, and that both Goff and Voss died before this action was commenced. · The Court refused to permit the defendant to testify as to said statement made by him to said Goff. This testimony, if competent, would tend to prove, that the defendant, more than ten years before this action was brought, had disclaimed the Voss ˙title under which the plaintiffs claim in such a manner as to charge Voss with notice of that fact. Both Voss and his agent Goff, to whom this notice is alleged to have been given, being dead, is the defendant a competent witness in respect thereto ?

Our statute declares, that no person offered as a witness in any civil action, suit or proceeding shall be excluded by reason of his interest in the event thereof, or because he is a party thereto, except that no party to any action shall be examined as a witness on his own behalf in regard to any personal transaction or communication between such witness and a person then deceased, or against the executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person—sec. 23, chap. 130, Code 1887. Before the word "survivor" was enacted into said statute this court in *Carlton,* v. *Mays,* 8 W. Va. 245, decided that a party to a civil action was competent to testify in his own behalf against a surviving partner in respect to a personal transaction had with the deceased partner. And in *Owens* v. *Owens,* HAYMOND, J. in commenting upon this provision of the statute, in the opinion of the Court says: "My mind is impressed with the conviction, that the true and proper construction of the words 'any transaction or communication had personally with a deceased person,' as used in the law, is, that it is thereby meant, any transaction or communication had with a deceased person otherwise than through an agent or third person. The spirit of the law, as I think, is not to allow a party to a suit against an executor, administrator *etc.* to testify on his own behalf in respect to any transactions or communication, had by such party with

a deceased party otherwise than through an agent or third person; and that generally all transactions or communications must be considered and held to have been had personally with the deceased, *when it does not appear that they were had with an agent* or third person." 14 W. Va. 94. Here we have an implication so unavoidable as to make it equivalent to an affirmative decision to the effect, that where there has been a transactions or communication had personally by a party with the agent of a deceased person, such party is a competent witness under the statute to testify on his own behalf in respect thereto against the executor, heirs *etc.* of such deceased person. If this is the proper construction of the statute, as it seems to me it is, it can make no difference in principle whether the agent is dead or alive at the time the testimony is offered. The deceased person referred to in the statute is the principal in the transaction and not the agent. According to what we may suppose to be the spirit of the statute, transactions or communications had personally with a deceased agent ought to be excluded, but as the legislature did not see proper to so enact the law, we are not at liberty to disregard the plain and express terms of the statute upon any supposition or fanciful idea of its spirit or what it ought, or the legislature might have intended it to be. When the text is plain and unambiguous, courts are not permitted to search for its meaning beyond the statute itself. Cooley's Const. Lim. 54, 57. If the supposed spirit or purpose of the statute and not its plain terms were the proper guide, then this Court in *Carlton* v. *Mays, supra,* should not have allowed a party to testify in his own behalf against a surviving partner in respect to a transaction had by him with the deceased partner. After this decision the legislature amended the statute so as to exclude the testimony of the party in such case; and if it elects to do so, it may follow this decision by an amendment which will exclude the testimony of a party in a case like this. Such an amendment, it seems to me, would be right and proper, but it is for the legislature and not the courts to make it. My conclusion, therefore, is that the plaintiff in error was a competent witness to testify in respect to the matters set forth in said fourth and fifth bills of exceptions hereinbefore referred to. Of course, the jury

ought to scrutinize and be careful as to the credit they give to the testimony of the party under such circumstances, but it can not, under our statute, be rejected as incompetent.

The next inquiry is, were the matters thus offered to be proved material in this case? It appears that the defendant had held the possession of the premises as the tenant of Voss and their relation to each other up to the time of the transaction in question was that of landlord and tenant. The important question then arises, whether or not a tenant in possession can by mere disclaimer and notice to his landlord, without an actual surrender of the premises, terminate his tenancy. In *Wilson* v. *Westerly*, 1 Nott & McCord, 373, it was held, that when a tenant acquired possession from his landlord he will not be permitted, *while he remains in possession*, to dispute the title of his landlord; but is bound, *bona fide, to give up the possession*, so as to place the parties in the same situation toward the premises that they occupied before they assumed the relation of landlord and tenant. While this rule seems to be just and reasonable as well as required by good faith on the part of the tenant, it does not appear to be the rule obtaining in many courts. The general rule seems to be that when the tenant disclaims to hold under his lease, and notice of this fact is brought home to the landlord, then the relation of the landlord and tenant ceases, and the tenant becomes a trespasser and his possession is adverse, and the landlord may by action dispossess him without notice to quit. If the tenant, with notice to the landlord, disclaims the tenure and claims the fee adversely in right of himself or a third person, or attorns to another, his possession then becomes a tortious one by the forfeiture of his right, and the landlord's right of entry is complete, and he may sue at any time within the period of limitation from that time. *Willison* v. *Watkins*, 3 Pet. 43; *Kane* v. *Bloodgood*, 7 Johns Chy. 90; Tyler on Eigel, 311; *Wild* v. *Surpell*, 10 Gratt. 405; *Miller* v. *Williams*, 15 Gratt. 213, 219; *Cooey* v. *Porter*, 22 W. Va. 120.

In the case at bar, it appears that the defendant was in possession at the time he accepted the lease from Voss, and that, consequently, he did not acquire his possession from the landlord; therefore, whether we apply the rule, that a tenant, *who acquires* his possession from the landlord, must surrender

his possession before he can assert an adverse claim, or the other rule, that, without an actual surrender of the possession, the tenant may, after a positive disclaimer and notice to the landlord, set up an adverse title either in himself or a third person, the defendant in this case was entitled to prove that he had given notice to Voss and that he was holding adversely to his title. This is what he sought to do by the testimony which the court excluded.

It seems to me, therefore, that the court erred in not permitting the defendant to testify in respect to the matters he proposed to testify to as set out in the said fourth and fifth bills of exceptions. If the defendant should be able to satisfy the jury that, more than three years before this action was commenced, he had disclaimed to hold under the Voss title, and that Voss or those claiming under him had notice of such disclaimer, then the right to bring this form of action was barred. For this error the judgment of the Circuit Court must be reversed, the verdict of the jury set aside and the case remanded for a new trial.

REVERSED.  REMANDED.