# FRANK GODFREY, TRUSTEE, *v.* HELEN ROWLAND.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JUNE 8, 1906.          DECIDED JULY 5, 1906.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

EJECTMENT—*evidence—authentication of clergyman's record of baptism—wife's testimony as to non-access—cross-examination—evidence of being lawfully begotten.*

Plaintiff as trustee for T. M. brought ejectment for T. M. as the only surviving lawfully begotten child of F. M. (1) A clergyman's entry of the baptism of W. T. M., shown to be T. M., was authenticated by proof of his handwriting, he being in Australia. Held: No error. (2) The wife of F. M., having testified for the defendant that she had two other sons living, born after she had become separated from her husband, the plaintiff showed by her testimony in rebuttal non-intercourse with her husband after they had become separated and until his death, the sons having been born several years after the separation began. The defendant was not allowed to cross-examine her concerning her illicit relations with the plaintiff. Held: The evidence was inadmissible under the rule in *Goodright v. Moss*, Cowp. 591, which appears to be law in England still and to have been adopted generally in the American cases, but the evidence and the refusal to allow cross-examination were harmless in the view that the verdict can stand for the plaintiff even if the sons George and Harry, designated in the evidence of the defendant, were co-tenants.

OPINION OF THE COURT BY HARTWELL, J.

(Frear, C.J., Dissenting.)

This was an action of ejectment in which the plaintiff obtained a verdict. At a former trial the defendant obtained a verdict which was set aside. 16 Haw. 377. The plaintiff claims the land as trustee for Thomas Metcalf the lawfully begotten son of Frank Metcalf to whom it was devised for life over in fee to his lawfully begotten children. We held in this case (p. 389) that the conveyance in fee from the life tenant to Helen Rowland, who would have taken on his dying without lawfully begotten children surviving, did not cut off the contingent remainder to his children; and (p. 383) that in order to prove the legality of a marriage between Frank and Alice Metcalf it was not necessary to prove that a license to marry had been issued since "legitimacy cannot be made to depend upon the proof or want of proof of the performance by any official of a merely clerical duty."

Exceptions 1 to 9 relate to evidence of the wife, Alice Metcalf, concerning non-intercourse with her husband; 10, 11 and 12, to admission of evidence of marriage license record without proving handwriting of the entrer or accounting for his absence were abandoned in argument in view of the former ruling; 12 and 13, to refusal to allow defendant to ask Alice Metcalf in cross-examination if she had illicit relations with the plaintiff; 14, to refusal to admit evidence of the conveyance from the life tenant to Helen Rowland (we do not consider this exception since the question it presents comes within the former ruling); 15, 16, 17 and 18, to admission of evidence of a record of baptism; 19, to refusal to instruct the jury (1) that their verdict, if for the plaintiff, could not be for more than an undivided one-third; or (2) that "In connection with evidence that nc sexual intercourse took place between Frank and Alice, it is also competent for defendant to show, (A) the adultery of the mother at or about the time of the child's conception, (B) the

habits in life of Frank and Alice, (C) their reputation in the family, (D) their conduct toward the child at the time of its birth, (E) the character of Alice Metcalf, (F) her general reputation for chastity, (G) other facts admitted in evidence and bearing on the probabilities of the case. If you find that the defendant has established these facts by clear and convincing evidence, they may be considered by you in arriving at your conclusion whether Thomas is legitimate or illegitimate;" or that (21) "It is not important whether the child baptized William Thomas Metcalf on February 26, 1882, is alive or dead, unless by affirmative evidence the plaintiff can show that such child was the Tom who is alive now. It cannot be presumed that the child baptized then as William Thomas Metcalf is Thomas Metcalf" (there was such evidence in the case and therefore the instruction was not required); or that (22) "In passing upon the question whether George and Harry are legitimate or illegitimate, I instruct you to entirely disregard any evidence by Alice tending to show that Frank did not have sexual intercourse with her at or about the time of their conception. A mother is not allowed to give such evidence for the purpose of having her issue claimed to have been born in lawful wedlock declared illegitimate; 23, to the instruction which the court of its own motion gave, that in passing on the legitimacy or illegitimacy of George and Harry "the testimony of either husband or wife that they did not cohabit together or have sexual intercourse with each other is not, alone, sufficient to prove non-intercourse or non-cohabitation between them. The testimony of either may be considered in connection with any other evidence adduced tending to prove such lack of sexual intercourse or cohabitation;" 24, to instructing the jury, at the plaintiff's request, that "In order that Thomas Metcalf should be found to be the lawfully begotten child of Frank Metcalf it is necessary that his parents should have been married prior to his birth, but in this connection I instruct you that in order to find a valid marriage it is not necessary to show the

issuance of a marriage license, nor is it necessary to show any ceremony, provided that the evidence shows that the parties were in fact married. The fact of marriage may be proved by any kind of evidence, whether direct or circumstantial" (the instruction was required by the former ruling); 25, 26 and 27, to the verdict as contrary to law, etc., to denial of motion for judgment non obstante as to two-thirds of the property sued for and of defendant's motion for new trial on grounds presented at the trial.

The defendant's brief treats first the subject of the baptismal record, claiming that the entry could not be authenticated by proving the handwriting of the entrer who was in Australia. It is claimed that upon the best considered cases and on principle this exception to the hearsay rule is confined to cases in which the person making the entry is dead or, at least, in which unavailing efforts to obtain his testimony are shown to have been made. Her attorneys say that they have been able to "find no English cases, early or late, where absence from the jurisdiction has been held sufficient," and that they "feel safe in asserting that in England the death of the entrer is a sine qua non to the admission of his entries," making the following citations: 1 Phillips on Evidence, 255, 259, 263; *Cooper v. Marsden,* 1 Esp. 1; *Stephen v. Gownap,* 6 Mew's Dig. 566; *Welch v. Barrett,* 15 Mass. 380, 385; *Nichols v. Webb,* 8 Wheat. 334; *Browning v. Flanagin,* 22 N. J. L. 567; *Brewster v. Doane,* 2 Hill 537; *Merill v. R. Co.,* 16 Wend. 586, 595; *Kennedy v. Doyle,* 10 Allen, 161, 165; *McKeen v. Bank,* 54 Atl. 49, 52.

The citation from Phillips on Evidence refers to entries of a business nature coming under the heading of "Declarations Against Interest," followed by the topic, "Admissibility of the Books of Deceased Rectors or Vicars," in which it is said, "It is essential in such cases that the rector or vicar whose books are offered in evidence appear to be dead."

The text books ordinarily mention the conflict of the American decisions on this subject. 2 Jones on Evidence, 727.

"It is indispensable for the use of these statements, that the entrant be unavailable as a witness. Death is usually spoken of as the condition on which they may be used; and death is certainly sufficient. Absence from the jurisdiction should equally suffice. On the same principle, insanity and illness hindering the presence of the witness should equally suffice; and in general 'the ground is the impossibility of obtaining testimony, and the cause of such impossibility seems immaterial.'" 1 Greenleaf on Evidence, Ed. 16, 204.

"The regular entries of a minister or a physician, concerning the services performed as a part of his occupation, fulfil adequately the demands of that Exception. Its peculiar limitation, however, is that the entrant must first be accounted for as deceased, out of the jurisdiction, or otherwise unavailable." 3 Wigmore on Evidence, 2004, suggesting no conflicting decisions.

The minute book of a bank messenger, who had absconded and was shown to be out of the jurisdiction of the court, containing a memorandum of notice of non-payment of a note given by him in the performance of his duties, was allowed to be shown on proof of his handwriting. The court, Shaw, C. J., after observing that the books of an insane bank clerk, kept in the regular course of his business, had been admitted on proof of his handwriting in *Union Bank v. Knapp,* 3 Pick. 96, said:

"The only distinction between these cases and the case at bar is, that here, for aught that appears, the witness is still living. But it was satisfactorily proved, not merely that the witness was out of the jurisdiction of the Court, but that it had become impossible to procure his testimony. We cannot distinguish this, in principle, from the case of death, or alienation of mind. The ground is, the impossibility of obtaining the testimony; and the cause of such impossibility seems immaterial." *North Bank v. Abbot,* 13 Pick. 471.

If business entries can thus be shown in order to substantiate money claims, there is far more reason for allowing authentication of entries of marriages, births, deaths or baptisms made

by a clergyman in the performance of his clerical duties and in the making of which he is supposed to have had no personal object in view other than to perform his duty.

We think that the entry was properly authenticated in this case although no effort appears to have been made to bring here the clergyman who made the entry from the Diocese of Adelaide in Australia, where he was. We are also inclined to think that the objection to the authentication was waived by the defendant. When the witness was called to prove the handwriting of the entrer, upon the defendant's objection to the introduction of the book in which the entry was made, the court ruled that only the name of the person baptized and date of baptism were admissible and instructed the jury accordingly. The witness having then been allowed to read to the jury the entry of the baptism, the defendant moved to strike out his evidence on the ground that the record was not offered as well as for other grounds above mentioned. The plaintiff afterwards recalled the witness and offered in evidence four entries from the record, recording the baptism of four Metcalf children, including that of William Thomas Metcalf, when the defendant objected to showing merely these entries, claiming that "the whole book should be offered and not merely these entries," and, in cross-examining the witness, offered "the whole book in evidence as the baptismal record of St. Andrews Cathedral Church," doing this, her attorneys said, without waiving her objection, which the court had overruled, to the introduction of the four entries. The court, after saying that she might make any reservation that she desired, asked her counsel if they offered the whole record of baptism, to which they answered. "It can all go in. It does not matter whether they are all births, marriages or deaths, it is all receivable." The defendant's object in putting in the whole book was to show a different handwriting in the other entries and thereby discredit the evidence as to the handwriting of the entries shown by the plaintiff. This was an attempt to get the benefit without taking the burden.

As to the refused instruction referred to in exception 19 (2), the defendant asked that each subdivision be given separately, if any were refused, and excepted generally to the refusal to give any portion. A separate exception ought to have been taken to the refusal of each separate and distinct portion of the instruction since it is difficult to sustain an exception in part and overrule it in part. Be this as it may, however, the 20th instruction, given at the defendant's request, went as far as, and probably further than, she could properly ask the court to go in this direction, namely, "The fact of legitimacy may be proved in the same manner as any other fact in a court of law and by either direct or circumstantial evidence. The presumption of legitimacy only stands until encountered by evidence which proves to the satisfaction of the jury that sexual intercourse did not take place at or about the time of conception."

The competency of Alice Metcalf's testimony of non-intercourse with her husband after they were separated is next considered. The rule, as stated in *Goodright v. Moss*, Cowp. 591 (1777), ejectment, that "The law of England is clear that the declarations of a father or mother cannot be admitted to bastardize the issue born after marriage," has been followed in many cases in England and America. In *Rideout's Trusts*, 10 Eq. 41 (1870), the court said, in respect of the husband's affidavit of non-cohabitation with his wife, "I am afraid you must give me some other evidence," but that, in respect of his affidavit of the wife's visit to Paris after their separation, "If that be put in evidence it will afford so strong a presumption that I think I can assume the fact of non-access on that occasion." In *Yearwood's Trusts*, 5 Ch. Div. 545 (1877), the court admitted a husband's affidavits showing the illegitimacy of certain children born during marriage, doing this on the strength of the decision *In Re Rideout's Trusts* in the supposition that that case "treated the evidence as admissible but not to be acted upon unless corroborated by other evidence." In *Nottingham v. Tomkinson*, 4 C. P. D. 343 (1879), the court refused a husband's evidence of non-access, expressing the opinion that the

judgment *In Re Rideout's Trusts* was not opposed to its decision and that the tendency of that case "was in the opposite direction to that supposed by Hall, V. C., *In Re Yearwood's Trusts.*" Again, in *Burnaby v. Baillie,* 42 Ch. Div. 282 (1889), in declining to receive such evidence, the court said: "The view taken by Vice Chancellor Hall *In Re Yearwood's Trusts* seems to me founded on a misapprehension of *In Re Rideout's Trusts,*" citing the *Nottingham case* and also *In Re Walker,* W. N. 196 (1885), in which "Mr. Justice Kay declined to follow *In Re Yearwood's Trusts,* and held that the evidence of the husband to prove non-access could not be received."

It is true that *Anon. v. Anon.* 22 Beav. 481, 23 Id. 373 (1855), excluding testimony of non-access before marriage, were overruled in the *Poulett Peerage case,* Ap. Cas. 399 (1903), but there is no English decision, of which we are aware, clearly overruling the principal case. Several cases are cited in Wigmore on Evidence, Sec. 2063, showing that the law was held otherwise prior to *Goodright v. Moss,* and in *R. v. Luffe,* 8 East 1903 (1807), the court, referring to a filiation order granted below, said that the objection was that the order was founded on the wife's evidence only, and that "there must be other proof of non-access," meaning, he says, "other sufficient testimony;" and so in several American cases the evidence appears to have been admitted "when corroborated by other evidence," but whether sufficient in itself, or only when corroborated, to prove non-access, is not quite clear. But the rule, as stated by Lord Mansfield in *Goodright v. Moss,* has generally been adopted in the American cases. *Rabeke v. Bare,* 115 Mich. 328, 69 Am. St. Rep. 567 and note.

But the plaintiff claims that the verdict, nevertheless, can stand since, if he were a tenant in common with the sons George and Harry, he would be entitled to possession of the land to the exclusion of the defendant who has shown no right under either of them. The plaintiff frankly says that the claim is presented for the first time in his supplementary brief and did

not occur to him at the trial. The defendant, however, insists that the presentation of the claim is inadmissible at this time because the case was tried on the theory that if the plaintiff showed no more than the interest of a tenant in common the verdict and judgment would have to be limited accordingly. But no instruction conceding this was asked for by the plaintiff. Whether he acquiesced in instructions upon the opposite theory or excepted to them would not appear in the defendant's bill of exceptions; but if he did not except to such instructions he is not bound to treat them as the law of the case as affecting his right to present this claim for the evidence was then all in and the defendant was not induced thereby to withhold any evidence to show a right, if any she had, under either or both of the sons, George and Harry, whom she claimed to be the persons rightfully entitled. No statement was made by the plaintiff that he would not demand a verdict for more than one-third if it should appear that that was all that he owned. We think, therefore, it is proper to consider this claim for if it is good law the error in admitting the wife's testimony as well as in refusing to allow her to be cross-examined upon her relations with the plaintiff and the other rulings and instructions upon the subject, which were excepted to, would be harmless.

Upon principle there is no reason why an intruder or tres-passer upon land, having no right there, should object to being put off by process of law invoked by one only, and not by all, of the co-owners. Each co-tenant has a right to enjoy possession of all of the common property undisturbed by unauthorized out-siders. It is not necessary that one co-tenant in seeking to oust a disseizor should act or profess to act for the interests of any one but himself. Tenants in common may join in bringing ejectment, (*Aylett v. Keaweamahi,* 8 Haw. 320,) but they are not obliged to do so. *Nahinai v. Lai,* 3 Haw. 317; *Ung Wong v. Kan Chu,* 5 Id. 225.

But the defendant insists that, even if plaintiff, claiming as sole owner but showing that he is only a co-owner with others,

would be entitled to a verdict, the verdict must be limited to the interest shown and cannot be a general verdict entitling him to be placed in possession to the exclusion of the defendant. If this were an action to quiet title requiring adjudication of the extent of the title of all the parties showing ownership or if it were in the nature of an equity suit requiring a declaration of titles or were subject to statutes prevailing in code states requiring that the real parties in interest be either plaintiffs or defendants, then the verdict, like a declaratory decree in equity, would properly find the extent of the titles.

In our practice a verdict in ejectment is 'for the plaintiff' or 'for the defendant' and, if for the plaintiff, is followed by a judgment that he have restitution of the premises. On this judgment a writ of restitution issues requiring the officer to place the plaintiff in exclusive possession. If the defendant showed a right of possession a special verdict would be proper defining the respective rights of the parties. It is to be observed that while, as frequently remarked in decisions of this court, ejectment, with us, is used for the trial of title, the judgment, following the statutory form of the petition, is merely that the plaintiff have restitution of the premises and does not declare his title.

The defendant in this case by showing, as she claims to have done, and, as we assume, for the purpose of considering this question, that she has done, that two others, namely, the sons George and Harry, besides the plaintiff, were entitled to the property, but failing to show that she held under either of them, would be estopped from showing it in any subsequent proceeding between herself and the plaintiff; so a verdict for the defendant would have estopped the plaintiff from afterwards showing, as against her, that he had any less interest than the whole. The plaintiff recovers by his showing of a paramount title to one-third, and right of possession to all, of the property.

There is great conflict in the decisions elsewhere concerning the right of a plaintiff to sustain a verdict under the circum-

stances of this case.  *Treat v. Riley,* 35 Cal. 129; *Dolph v. Barney,* 5 Ore. 194; *Sherin v. Larson,* 28 Minn. 523; *Johnson v. Tilden,* 5 Vt. 525; besides Connecticut and Florida cases sustain the view here taken, but it is discarded in other states, as Kansas, Virginia, Missouri, Illinois, Massachusetts and Pennsylvania.

In *Hardy v. Johnson,* 1 Wall. 371, the plaintiff brought ejectment claiming ownership but the jury found that he had only an undivided one-twentieth interest.  The court held that "as the defendants had shown no title he was entitled to the possession of the entire premises," and this ruling was affirmed on error as "correct under the system of pleading and practice which prevails in the State courts of California and which, with some slight modifications, has been adopted by the Circuit Court of the United States for common law cases."

The reasoning of decisions on either side of the question is not always satisfactory.  In real actions like *Dewey v. Brown,* 2 Pick. 387, which was a writ of entry, the defendant's title is required to be adjudicated, hence a co-tenant's right should be defined by the verdict.  It is difficult to see why a verdict for the plaintiff on a claim of the entirety is supported on his showing of a co-tenancy in cases in which the defendant is a mere intruder and not equally so in cases in which the defendant holds over without right and refuses a demand to let into possession a rightful, if not the only, owner.  The occupant is a disseizor in one case as well as in another.

Many decisions, which are against the view we take, are based upon code provisions requiring that every action be brought in the name of the real party in interest and that "those who are united in interest must be joined as plaintiffs or defendants."  *Mattox v. Boggs,* 19 Neb. 648, (in which the court remarked that the Connecticut cases contra were "decided prior to the enactment of any statute similar to the provision of our code.")  We are, therefore, unable to distinguish this case from *Kwong Lee Wai v. Ching Shai,* 11 Haw. 444, in which a

verdict for the plaintiff was sustained although the plaintiff showed title in only an undivided one-half, the court having refused to instruct the jury that the "plaintiffs, not having shown that they had title to all the land, cannot recover in any event for more than one-half."

In *Doe v. King,* 6 Exch. 789, it did not appear how many co-tenants there were with the plaintiff. This of itself was sufficient reason for the decision although the dissenting opinion of Platt, B., states the law, we think, as applicable to this case:

"It is true that, in ejectment, the title of the lessor is in issue; but the object of the action is to recover the possession from a trespasser. Now, a tenant in common is the owner of the whole estate in common with his co-tenants; therefore, as soon as he has proved his right to the possession in common with others, and that the defendant, having no such right, is a wrongdoer as against him, he is, in my opinion, entitled to a general verdict, for the purpose of recovering possession of the whole. It is no answer to say that the sheriff can only put a lessor of the plaintiff in possession of such a share of the premises as he has recovered. I agree that where different persons claim certain portions only, the verdict ought to be limited accordingly. The observation with reference to estoppel seems to me not to apply, because, in an action for mesne profits, the damages might be limited to the proportion of the premises to which the plaintiff was entitled."

Upon the whole we think that the verdict ought to stand.

Exceptions overruled.

*A. G. M. Robertson* and *C. F. Clemons* (*Thompson & Clemons* with them on the brief) for plaintiff.

*E. B. McClanahan* and *S. H. Derby* (*Kinney, McClanahan & Derby* on the brief) for defendant.

### DISSENTING OPINION OF FREAR, C.J.

I dissent on the last point, though not without hesitation, for I realize that much can be said on the other side both in reason and on authority, and yet I feel that the weight of both

reason and authority favor the view that a tenant in common should not be permitted to recover more than his aliquot part even from one who has not title, and especially when, as in this case, he claims in hostility to his alleged cotenants as well as to the defendant and the latter is not a mere intruder or trespasser but has been in possession long and under color of title.

The text books as well as the cases are well divided on this question. Warvelle, for instance, (Ejectment, secs. 122-124) thinks that on principle one tenant in common should be permitted to recover the whole as against a stranger, except perhaps when, as in this case, he does not recognize his alleged cotenants, but he concedes that the "volume of authority" is against that view. Jones (2 Real Property, secs. 1936, 1937), on the other hand, thinks that on principle a tenant in common should be permitted to recover only to the extent of his title, but states that the weight of authority is against him. Evidently he was mistaken as to the weight of authority being against him.

The rule at common law was that the plaintiff could recover only his share and there appears to me no adequate reason for reversing that rule. It is supported by the English courts, the federal courts, and, as it is said, the courts of Alabama, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New York, Ohio, Pennsylvania, South Carolina and Virginia, though I have not examined some of the cases cited in the text books and digests from these courts and others do not seem to be very satisfactory, and some are based in part on statutes. The following are among the most satisfactory: *Doe v. King,* 6 Exch. 791; *Stevens v. Ruggles,* 5 Mason 221 (per Story, J. of the federal supreme court); *Whittle v. Artis,* 55 Fed. 919 (the federal cases *Hardy v. Johnson,* 1 Wall. 371, *French v. Edwards,* Fed. Cas. No. 5098, and *Le Franc v. Richmond,* Fed. Cas. No. 8209, hold merely that the contrary is the

law in California); *Dewey v. Brown,* 2 Pick. 387; *Buttrick v. Tilton,* 141 Mass. 93; *Gray v. Givens,* 26 Mo. 303; *Baber v. Henderson,* 156 Mo. 566; *Marshall v. Palmer,* 91 Va. 344 (21 S. E. 672; *Nye v. Lovitt,* 92 Va. 710 (24 S. E. 345); *Mobley v. Bruner,* 59 Pa. St. 481; *King v. Hyatt,* 51 Kan. 504 (32 Pac. 1107); *Minke v. McNamee,* 30 Md. 294 (96 Am. Dec. 577); *Martin v. Neal,* 125 Ind. 547; *Johnson v. Hardy,* 43 Neb. 368; *Strean v. Lloyd,* 128 Ill. 493; *Keefe v. Doreland,* 16 Mont. 16; *Parrott v. Dyer,* 105 Ga. 93 (31 S. E. 417); *Harrelson v. Sarvis,* 39 S. C. 14 (17 S. E. 368); *Young v. Adams,* 14 B. Mon. 127 (58 Am. Dec. 654); *Hall v. Dodge,* 38 N. H. 352; *Hughes v. Holliday,* 3 Gr. 30.

The opposite view is favored by the courts of California, Colorado, Connecticut, Florida, Minnesota, Nevada, North Carolina, Oregon, South Dakota, Texas, Vermont, Washington and West Virginia. See *Williams v. Sutton,* 43 Cal. 65; *Newman v. Bank,* 80 Cal. 368; *Weese v. Barker,* 7 Colo. 178; *Barrett v. French,* 1 Conn. 354; *Simmons v. Spratt,* 26 Fla. 461 (9 L. R. A. 343); *Sherin v. Larson,* 28 Minn. 523; *Brown v. Warren,* 16 Nev. 228; *Foster v. Hackett,* 112 N. C. 546; *Dolph v. Barney,* 5 Or. 191; *Mather v. Dunn,* 11 S. D. 196; *Hibbard v. Foster,* 24 Vt. 542; *Robinson v. Sherwin,* 36 Vt. 69; *Allen v. Higgins,* 9 Wash. 446; *Telfender v. Dillard,* 70 Tex. 138; *Voss v. King,* 33 W. Va. 236 (10 S. E. 402). Some of these cases, like some on the other side, are unsatisfactory because of their indefiniteness and failure to state reasons. In some the opinion upon this point is expressed merely obiter or arguendo. In some the decisions are based in part at least on the mistaken view that tenants in common, like joint tenants, hold *per tout* as well as *per my,* and in some on the mistaken view that it was the rule at common law that one cotenant might recover all. Some of these courts place emphasis on the fact that in their jurisdictions ejectment is a mere possessory action and not, as in some other states and here, an action to try title as well. One of these courts, that of North Carolina, while holding that a verdict for all may be sustained, holds also that

such a verdict cannot be demanded as a matter of right and that the usual and better practice is to award to a cotenant only his aliquot part, in order to avoid practical difficulties that would otherwise be likely to arise afterwards in the execution of the judgment and in the use of the judgment as an estoppel in future litigation—difficulties which will be referred to more fully below. See particularly *Pierce v. Wanett,* 32 N. C. 446. A common ground for holding that one cotenant may recover all is that he represents his cotenants as well as himself, and consequently the courts that hold that way state either affirmatively that one may recover all if he recognizes his cotenants (see, for instance, *Barrett v. French,* 1 Conn. 354, supra) or negatively that he cannot recover more than his share if he acts for himself alone and in hostility to his cotenants (see, for instance, *Cromwell v. Holliday,* 34 Tex. 464). Such cases as applied to the present case are really against the view that one cotenant may recover all, for in the present case the plaintiff claims title to all and is as hostile to his alleged cotenants as to the defendant and does not recognize or represent them in any way. If there is any sound reason in support of the view that one cotenant may recover all, at least under the circumstances of this case, it must be because he has by virtue of the right to his own undivided interest also a right superior to that of a stranger in respect of the undivided interests of his cotenants. But what is his right as to the interests of his cotenants? What is its foundation? What its extent? Is it, when he is not in possession, superior to the right of one who has been in possession long and under color of title? Does it extend to putting such a person as well as a mere intruder or trespasser out altogether? A tenant in common certainly does not hold *per tout.* The interests of tenants in common are several and distinct. One cannot convey or lease any more than his own interest. No doubt one who has a superior right of possession though without a perfect title, as one who has been in peaceable possession for a period and especially if he has color of title, may recover in ejectment from one who has just taken posses-

sion by force without any right. *Kwong Lee Wai v. Ching Shai,* 11 Haw. 444. But to hold that the plaintiff who has never been in possession may recover exclusive possession from one who has long been in under color of title on the ground that he has a superior right of possession as to the two-thirds which by hypothesis do not belong to him is to base the decision on something that is vague and indefinite and seems to savor of begging the question. At any rate the argument in support of the opposite view seems the stronger. It is in part as follows:

A plaintiff in ejectment must recover if at all on the strength of his own case and not on the weakness of the defendant's case. The burden is on him. His recovery should be in accord with his proved right. If he proves title to only an undivided interest and it does not appear who his cotenants are, he of course cannot recover more than his share, because, for aught that appears, the defendant may be the owner of some or all of the rest. But if it appears that the owners of the rest are, or were at one time, persons other than the defendant, must the latter then be put to the task of proving that he has since become the owner or is holding by consent of the owners, that is, must he connect himself with those who are shown once to have been the cotenants, in order to prevent the plaintiff from recovering what does not belong to him? If so, it might involve a lengthy trial of side issues—a trial of rights with which the plaintiff has nothing to do—rights of others, the cotenants, who are not parties. There may be little or no question as to the plaintiff's ownership of a certain undivided interest and he may be able to prove that quickly and easily. But suppose, for instance, the defendant claims title by adverse possession against the cotenants as to the rest. If he is obliged to prove this claim, it may mean a prolonged trial of rights as between him and such cotenants, although the latter are not represented in the case and may even be willing to concede the defendant's claim. To go a step further, suppose the jury finds against the claim and awards all to the plaintiff. The cotenants are not bound

and cannot take advantage of the judgment, for they were not parties. They therefore bring their action, if necessary, against the plaintiff in the first action and obtain a judgment which lets them into possession with him. The defendant in the first action in turn, not being bound as against the cotenants by either of the previous judgments, brings his action against them and obtains a judgment which puts him in and the cotenants out. Thus there are three parties, each with a conclusive judgment in his favor and one against him, who may in turn in perpetual succession get in and be put out, except that the plaintiff in the first action cannot be wholly excluded; that is, A gets in and puts out C, B then gets in with A, C in turn gets in and puts out B, A then puts out C, B again gets in with A. then C again gets in and puts out B, and so on ad infinitum. Again, if one cotenant is allowed to recover all, the judgment would be conclusive in his favor in a subsequent action by him to recover the whole of the mesne profits although he is properly entitled to only his share of such profits. See particularly the English, Maryland and North Carolina cases, supra. Again, the form of the judgment or its mode of execution varies according as the plaintiff recovers a verdict for the whole or for only his part, and this is one of the reasons given (see the English case) for holding that the verdict should be for the plaintiff's part alone, so that the judgment and execution may conform to the truth, and this difficulty is recognized by the North Carolina case also, which seems to hold that the execution should be for only what the plaintiff is entitled to even if the judgment is for all and that the plaintiff if he takes more does so at his own risk, but that this can be settled only by further litigation and not summarily by the judge in directing the mode of execution.

Again, to pass from technical though very practical difficulties to considerations of fairness, and bearing in mind that the interests of tenants in common are distinct, that their rights of possession are several, and that there is no privity between them, entire justice is done one who sues alone if he is given

his full share. He cannot fairly ask for more. A defendant in possession ought not to be disturbed except by one who has a right to do so, and then only to the extent of that right. The cotenants of the plaintiff may be as willing that the defendant should occupy in respect of their interests as that the plaintiff should. If one cotenant may recover all, each alleged cotenant may sue successively, and thus the defendant stands as many chances to lose all as there are alleged cotenants while the latter stand as many chances to win all, that is, if the defendant loses in any one case he loses all while if the alleged cotenants lose in every case but one and win that, they win all. The chances are uneven. Again, if one cotenant may recover all he might recover what belongs to his cotenants even though they might be estopped from recovering it for themselves. To permit one tenant in common to recover all under the circumstances of this case, might be a wrong to his cotenants as well as to the defendant. For the plaintiff has never recognized that his two alleged cotenants were cotenants, and under the instruction of the court that the verdict could be for only one-third if the other two children were legitimate and therefore cotenants, the verdict in favor of the plaintiff for the entire premises must be construed as a verdict for the title to all, and not merely the possession of all in virtue of a title to one-third. Consequently, if the judgment is allowed to stand and the plaintiff takes possession under it, his possession will be adverse to his cotenants from the start and they will not have the advantage of the rule that one cotenant holds in subserviency to the others and that adverse possession cannot begin in favor of one against the others until notice of it is brought home to the latter. *Smith v. Hamakua Mill,* 13 Haw. 716. Why not require the verdict and judgment to conform to the truth and thus avoid future difficulties, litigation and injustice? At most one tenant in common could not justly ask for more than a title to his share and possession of all as against a stranger, and yet if the verdict in this case should be allowed to stand only on condition that a remittitur should be filed or the judgment so framed or

the pleadings so amended as to show title to one-third only and a right to the possession of the whole as against the defendant. it is clear that the plaintiff would elect to go to another trial for the purpose of proving on proper evidence that he was the sole owner. Why let him hold a verdict for the title as well as the possession of the whole and thus enable him to take such advantages as he can from this against his alleged cotenants? Why help him in an attempt to wrong his cotenants, if there are cotenants, as we must assume there are for the purposes of the present contention? Of course, he contends that there are no cotenants, in which case there would be no wrong, but we must assume the contrary for the present.

It has been the general view, and the practice has been in accord with it, in this jurisdiction that a tenant in common may recover only his aliquot part, though that has never been actually decided. The fact that ejectment tries title as well as the right of possession here furnishes an additional reason why this rule should be maintained. In *Kwong Lee Wai v. Ching Shai,* supra, for instance, the plaintiff had title to an undivided half but it was taken for granted though not decided that he could not on the strength of that recover the other half from the defendant who was a mere trespasser, and therefore he was allowed to recover the other half solely on his independent right to that by virtue of having, before the wrongful entry of the defendant, had long peaceable possession under color of title—a right that would have entitled him to the possession of the whole if he had not had title to any part.