JOHN DRAKE *et al. v.* FLOYD P. PARKER *et al.*

(No. 8653)

Submitted March 2, 1938. Decided March 22, 1938.

*Grover F. Hedges* and *M. O. Litz,* for appellants.
*S. P. Bell* and *Harper & Baker,* for appellees.

HATCHER, JUDGE:

This suit involves (1) a conveyance of land by devisees who were ignorant of the will making them such, and (2) a written executory agreement by the testatrix, antedating the will, that others should have the land at her death. The two subjects will be considered separately.

1. J. H. and Almeda Parker were husband and wife. They executed a joint will in 1913, which devised a tract of 130 acres owned by her, to her brother, plaintiff John Drake, and her sister, plaintiff Armetha Wright, jointly. Mrs. Parker died in September, 1928, without revoking the will. In October, 1928, and before her will was probated, J. H. procured from the plaintiffs a deed to himself of all property which she "has or might have * * * bequeathed unto them." The will was probated and the deed recorded on the same day, November 16, 1928. He died in 1935, leaving a will revoking his former will and devising 86 acres of the 130 acres to his son, defendant Floyd Parker, and the remainder of the tract to his daughter, defendant Sarah Carper. Plaintiffs seek to have their deed to J. H. cancelled, as procured fraudulently, the devise of the 130 acres by J. H. to defendants held for naught, and themselves "decreed to be the owners in fee simple absolute" thereof.

Plaintiffs proved to the satisfaction of the trial chancellor that they were "poorly schooled"; that when they executed the deed to J. H., they were "wholly ignorant" of the fact that their sister, Almeda, had devised them the 130 acres; that George Parker, a notary and a brother of J. H., took the acknowledgments to the deed and

acted as an agent of J. H.; that both brothers represented to them that the deed was merely to enable J. H. "to draw the benefits of the oil and gas privileges" on the 130 acres; that without reading the deed, they signed it in that belief; and that the "consideration paid for the deed is so flagrantly inadequate as to shock the conscience of the chancellor." They were decreed all the relief sought.

The chancellor did not consider the testimony of plaintiffs regarding their personal transactions with J. H., but did consider the alleged representations made them by George. We are of opinion this was proper under *Voss* v. *King,* 33 W. Va. 236, 10 S. E. 402. Plaintiffs learned of the alleged fraud of J. H. several years before his death. But since they were his beneficiaries under the joint will of 1913, the same as they were Almeda's, there was no occasion for them to protest the fraud until after he revoked that will in 1935. Consequently, there was no laches, as defendants insist, and we affirm the finding of the circuit court so far, but so far only, as it set aside the deed of plaintiffs to J. H. and held for naught his devise of the 130 acres to Floyd and Sarah.

2. The answer of defendants, after denying fraud by their ancestor, showed that Josie Smith was another child of J. H. and Almeda Parker; and that a written tripartite agreement was executed in 1904 between (a) Josie, (b) her parents, and (c) Floyd Parker and Millard Carper (husband of Sarah), whereby Floyd and Millard conveyed to J. H. and Almeda and they in turn to Josie a tract of 52 acres, in consideration of which she, as a prospective heir of J. H. and Almeda, assigned her "undivided interest (it being understood to be one-third)" in the 130 acres to Floyd and Millard; these two also covenanted to convey to J. H. Smith, the husband of Josie, a certain other tract of 96 acres; and J. H. and Almeda "bargained and traded" the 130 acres to Floyd and Millard with the understanding that when J. H. and Almeda died, Floyd and Millard "should be vested·with full title" thereto. The answer prayed that Millard be made a party, that the contract be specifically performed, and that Floyd and Millard be adjudicated the owners

of the 130 acres. Upon demurrer, all matters relating to the contract were stricken from the answer.

The demurrer stated one ground only, that the matters set up in the answer for affirmative relief were not germane to the subject matter of the bill. It alleged that Almeda owned the 130 acres; showed her devise to plaintiffs; sought to recapture their title from defendants; and then to have plaintiffs decreed not merely the owners of the title, but the *absolute owners of the tract* (which the circuit court actually did). Whatever equity deprived Almeda of absolute ownership would continue the same debilitating effect upon the title after it passed to plaintiffs and can now be plead against them. The contract with Almeda alleged by defendants is such an equity. 58 C. J., Spec. Perf., sec. 89. Therefore, the contract is not only germane to the relief plaintiffs seek, but timely in defense, lest an adjudication herein that the plaintiffs have a fee simple title to the tract would preclude Floyd from asserting the contract in a separate suit. The allegation of the contract and the affirmative relief sought thereon in the answer are permissible under Code, 56-4-58.

Plaintiffs would now arraign the answer because ownership under the contract differs from that under the devise of J. H., not only in degree but in persons. That difference seems immaterial to us, since the parties concerned are in accord thereon. Plaintiffs also contend now that specific performance of the contract is not merited under the answer, because it does not allege that Floyd and Millard have conveyed the 96 acres to J. H. Smith, as they contracted. The deed of J. H. and Almeda to Josie is exhibited with the answer. This deed recites that the land was conveyed to the grantors by Floyd and Millard, "for or in the place of" Josie's undivided interest in the 130 acres; that "this trade" was agreed upon by the grantors, and that Floyd and Millard are "to have possession" of Josie's interest at the death of the grantors. Thus it appears that Floyd and Millard have performed a severable part of the contract and, according to the answer, are entitled to one-third of the 130 acres,

if· no more. Specific performance *pro tanto* involves no difficulty here; to refuse such performance would amount to a fraud on them. The general aim of courts in such cases is to grant the relief, which will best accomplish justice, "without too close attention to technical or narrow questions." 58 C. J., Spec. Perf., sec. 574. Consequently, we are of opinion that the demurrer was improperly sustained, and the ruling thereon is reversed. This reversal renders premature the adjudication that plaintiffs own the 130 acres in fee simple absolute, and that adjudication is also set aside. The cause is remanded.

*Affirmed in part; reversed in part; remanded.*